**STENNETT ELEVATOR, INC., An Iowa Corporation and Leroy Peterson, Appellants,**

v.

**STATE of Iowa, the Iowa State Commerce Commission, and Howard Gowin, Wallace Dick, Wayne Van Den Berg, Donna Adair and Marlin Piatt, in their capacity as agents and employees of the State of Iowa and the Iowa State Commerce Commission, Appellees.**

No. 87–1043.

Supreme Court of Iowa.

Oct. 19, 1988.

Rehearing Denied Nov. 18, 1988.

Lawrence L. Marcucci and Edward N. McConnell of LaMarca, Marcucci, Wiggins & Anderson, P.C., West Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., and Shirley A. Steffe, Asst. Atty. Gen., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and ANDREASEN, JJ.

LARSON, Justice.

The State of Iowa, through its commerce commission, suspended the grain dealer and warehouse licenses of Stennett Elevator, Inc., of Red Oak, Iowa, and the elevator soon went out of business. Stennett Elevator, Inc., and its sole shareholder, Leroy Peterson (to whom we will refer collectively as Stennett), sued the state and several commerce commission employees for

alleged breach of their inspection and licensing duties under Iowa Code chapters 542 and 543. The district court granted summary judgment for the defendants on the ground that Iowa Code sections 542.14 (grain dealers) and 543.38 (warehouses) exempt the state from any claims of negligence in connection with the inspection and licensing procedures of Iowa Code chapters 542 and 543. We affirm but on different grounds.

Stennett held grain dealer and warehouse licenses under Iowa Code chapters 542 and 543 (1985). On August 10, 1983, a routine examination performed by Howard Gowin, an inspector/supervisor for the Warehouse Division of the Iowa State Commerce Commission, revealed various violations of the applicable statutes and regulations including grain deficiencies. A second examination, on September 20, 1983, revealed that the grain deficiency had not been corrected.

On September 23, 1983, Wayne Van Den Berg, assistant director of the warehouse division, under the direction of Wallace Dick, director of the warehouse division, filed an information with the Iowa State Commerce Commission recommending immediate suspension of Stennett's warehouse license for failing to correct the grain deficiency within the required time. On September 26, 1983, the license was suspended, and the elevator was placed under supervision of the Iowa State Commerce Commission until the grain deficiency was corrected.

An information was later filed recommending the grain dealer's license be immediately suspended. At the hearing, a commerce commission accounting technician testified that the financial statement submitted by the elevator did not comply with requirements to retain a license and that the financial condition of the elevator could not be corrected by an additional bond. Testimony was also received regarding a continuing grain deficiency and problems with insufficient-funds checks issued by Stennett.

The commission issued a proposed order revoking both licenses and prohibited the removal or acquisition of additional grain. The commission was appointed as receiver. The elevator applied for a partial stay and appealed the proposed order revoking the licenses. The application for stay was denied. The commerce commission removed and sold the grain in February 1984.

On August 2, 1985, Stennett filed a claim with the State Appeal Board and then filed a petition in district court alleging various acts of negligence by the State in connection with the suspension and revocation of its licenses.

■ The State's answer alleged that the State was exempt from Stennett's claims, under Iowa Code sections 542.14 and 543.38, and the State's later motion for summary judgment was granted on that ground. Stennett appealed.

The exemption statutes, Iowa Code sections 542.14 and 543.38, are identical. The first deals with grain dealer licenses and the second with warehouse licenses. They provide:

Nothing in this chapter shall be construed to imply any guarantee or obligation on the part of the state of Iowa, or any of its agencies, employees or officials, either elective or appointive, *in respect to any agreement or undertaking to which the provisions of this chapter relate.*

(Emphasis added.)

Stennett argues that the "agreement or undertaking" referred to is only that between the licensee and the grain producer, not between the licensee and the state. In other words, it argues these sections only exempt the state from having to fulfill obligations of the elevator incurred by it through the purchase or storage of grain. The State counters that the "undertaking" referred to in these sections must be read more broadly, that it includes the duties of inspection and regulation of elevators by the state as provided by chapters 542 and 543. Thus, it claims, it is immunized by sections 542.14 and 543.38 from liability in connection with them.

In *Adam v. State*, 380 N.W.2d 716 (Iowa 1986), we discussed these exemption statutes, stating:

> The evident purpose of the General Assembly in enacting the exemption sections [Iowa Code sections 542.14 and 543.38] was to make certain that the State made no guarantee of and had no obligation on the agreements and undertakings of grain dealers and grain warehouses which [chapters 542 and 543] seek to make reliable and to which the two chapters relate....

*Id.* at 721. *Adam* thus suggests a narrow scope of the State's exemptions, exempting it only with respect to claims by producers or customers, not those by licensees. Nevertheless, we believe the State cannot be held liable in this case, based on the State's alternative argument that no duty is owed by the State to its grain dealer or warehouse licensees. Although this was not the rationale of the district court in its ruling, we will affirm on any ground appearing, even though it is not the one relied on by the district court. *See Galloway v. Bankers Trust Co.*, 420 N.W.2d 437, 441 (Iowa 1988); *Citizens First Nat'l Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980).

The sole basis of liability relied on by Stennett is the State's alleged failure to properly perform its statutory inspection and audit duties under chapters 542 and 543. We held in *Adam* that if the State failed to properly carry out those duties, it could be subjected to liability to a customer. 380 N.W.2d at 722–24. This is so, because chapters 542 and 543 were enacted to protect the licensee's customers. *Id.* at 720–21.

The problem with Stennett's argument in this case is that neither the inspection statutes, nor any of our cases, suggest that chapters 542 and 543 were intended to protect the *licensee* from acts by the state. An intent to protect a particular party is a prerequisite to a claim of negligence based on violations of a statute. *See Adam*, 380 N.W.2d at 722–23; *Rinkleff v. Knox*, 375 N.W.2d 262, 266–67 (Iowa 1985); *Hildenbrand v. Cox*, 369 N.W.2d 411, 416 (Iowa 1985); *Wilson v. Nepstad*, 282 N.W.2d 664,

667 (Iowa 1979); Restatement (Second) of Torts § 286 (1965).

As we said in *Adam*, the purpose of chapter 542 was the "protection of persons who deal with grain dealers, to make as certain as reasonably possible that those persons get their money for their grain," 380 N.W.2d at 720, and the same rationale applied to the warehouse statutes under chapter 543. *Id.* at 721.

We hold that, because chapter 542 and 543 do not create a duty of care by the State to its licensees, it was proper to dismiss Stennett's suit. We therefore affirm the summary judgment.

AFFIRMED.