**Maryrose M. MILLINGTON and Thomas Millington, Jr., Appellants,**

v.

**John A. KUBA, Individually, Edward R. Kuba, Sr., Individually, and John A. Kuba and Edward R. Kuba, Sr., d/b/a Kuba Funeral Home, Appellees.**

**No. 94–105.**

Supreme Court of Iowa.

May 24, 1995.

Donald L. Carr, II, Michael E. Marshall, William B. Serangeli, and Edward G. Parker of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellants.

Minor Barnes and JoAnne M. Lilledahl of Pickens, Barnes & Abernathy, Cedar Rapids, for appellees.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Plaintiffs, Maryrose M. Millington and Thomas Millington, Jr., brought this action to recover damages for the emotional distress they allegedly suffered as a result of the alleged wrongful cremation of the body of their father, Thomas Henry Millington, Sr., by the defendant funeral home directors, John A. Kuba and Edward R. Kuba, Sr., and the Kuba Funeral Home.[1] Kubas cremated the plaintiffs' father's body on the authorization of only one of the deceased's children, Kimberly Kleckner–Millington, and in spite of the contrary and known instructions of the plaintiffs.

Because defendants Kubas failed to move or answer after being served with the original notice and plaintiffs' petition, plaintiffs obtained a default against Kubas. On subsequent motion by Kubas, however, the district court set the default aside. The court found that Kubas had shown good cause, and that

---

1. Thomas Henry Millington, Sr.'s other child, Robert H. Millington, was originally a plaintiff but subsequently dismissed his claim against the defendants.

their failure to answer and defend was based on mistake, inadvertence, and excusable neglect.

Ultimately, the district court sustained Kubas' motion for summary judgment. The court concluded that plaintiffs failed to meet their burden of setting forth a prima facie case by showing a genuine issue of fact on every element of their claims of negligent and intentional infliction of emotional distress. We agree with both the district court's ruling sustaining defendants' motion to set aside the default entered against them and its later ruling sustaining defendants' motion for summary judgment. Accordingly, we affirm.

I. *Undisputed facts and proceedings.* We accept the following facts as established for purposes of appeal.

A. *Undisputed facts.* Thomas Henry Millington, Sr. died on July 2, 1989 in Cedar Rapids, Iowa.[2] At the time of his death, he was single but was survived by four children: Kimberly Kleckner–Millington of Cedar Rapids, and Thomas, Jr., Robert, and Maryrose Millington of Michigan.

After his death, Thomas, Sr.'s body was initially taken to Cedar Memorial Funeral Home (Cedar Memorial) in Cedar Rapids. After the body had been delivered, Maryrose informed Cedar Memorial by telephone and mailgram that her father's body should not be cremated and that it should be transported to Michigan for disposition. Cedar Memorial informed Kimberly that it required the consent of all four of Thomas, Sr.'s children as equal next of kin before any disposition could be made regarding his body.

The next day Kimberly's attorney notified Maryrose's attorney in Cedar Rapids that defendant Kuba Funeral Home, owned by defendants John A. Kuba and Edward R. Kuba, Sr., (collectively Kubas) had agreed to cremate Thomas, Sr.'s body without all the children's consent. Maryrose's attorney told Kimberly's attorney that Maryrose objected to such a course of action.

After speaking with Kimberly's attorney, Maryrose's attorney telephoned Maryrose to inform her that Kimberly was having their father's remains picked up by Kubas with the understanding that Kubas would proceed with the cremation without Maryrose's consent. Both Maryrose and her attorney telephoned Kubas and told them of Maryrose's objections to the cremation of her father's remains.

About an hour and a half after Kubas had spoken with Maryrose and her attorney, Kubas dispatched a hearse to Cedar Memorial for the purpose of obtaining Thomas, Sr.'s body. Around the same time, Kimberly signed the funeral home's "Authority to Cremate" form. A cremation permit was then obtained from the Linn County Medical Examiner as provided by Iowa Code section 331.805(3)(b) (1991). Pursuant to the permit, Kubas cremated Thomas, Sr.'s body.

Before they had found out about their father's cremation, Thomas and Robert, the deceased father's two sons, also requested, via a subsequent mailgram to Kubas, that the body of their father be returned to Michigan.

There is no evidence in the record that Thomas, Sr. had expressed any desire not to be cremated. Although before his death he had purchased three cemetery lots in Michigan near those of his deceased parents, the indications were that he had preferred cremation. His last will and testament specifically called for the disposition of his remains in Michigan.

Maryrose contends that as a result of Kubas' alleged wrongful cremation of her father's body she suffered from headaches, insomnia, and loss of appetite without weight loss. She was not treated by a physician or any other medical practitioner for the symptoms and has taken no medications.

Regarding his reaction, Thomas, Jr. allegedly had some fits of rage after his father's cremation, but he has not experienced them since November 1989. He suffered no physical difficulties, and, like his sister, he did not seek any medical attention as a result of the alleged wrongful cremation of his father.

---

**2.** The parties dispute whether Thomas, Sr. was a resident of Cedar Rapids, Iowa or of Michigan at the time of his death, but his residency is immaterial for purposes of this appeal.

B. *Proceedings.* Maryrose M. Millington, Thomas Millington, Jr., and Robert H. Millington filed this action against John A. Kuba and Edward R. Kuba, Sr., individually as owners of the Kuba Funeral Home, and the Kuba Funeral Home to recover damages for these emotional problems allegedly caused by defendants' alleged wrongful cremation of plaintiffs' father's body. Robert H. Millington later withdrew from the action. In their petition, the Millingtons stated eleven counts or claims, which may be summarized as actions for negligent and intentional infliction of emotional distress due to the alleged wrongful cremation of their father's body.

All defendants were served with an original notice and plaintiffs' petition on July 2, 1991. When Kubas had failed to respond by October 1991, plaintiffs requested that the clerk of court enter a default against them for failure to file an answer or other responsive pleading to the petition. *See* Iowa R.Civ.P. 53, 231. The clerk entered the default on October 16, 1991.

In January 1992, plaintiffs requested a hearing to set the amount of damages. The hearing was set for March 27. On February 7, 1992, Kubas responded by filing a motion to set aside the default that had been entered against them.

After an evidentiary hearing, the district court set aside Kubas' default, finding that they had shown good cause for their failure to answer and defend based on mistake, inadvertence, and excusable neglect. *See* Iowa R.Civ.P. 236. On appeal, plaintiffs contend the default should not have been set aside.

Later, Kubas filed a motion for summary judgment as to all counts of the petition, *see* Iowa Rule of Civil Procedure 237(b), primarily contending: (1) defendants had no duty to obtain authorization from all of decedent's children prior to cremation of decedent's body and (2) defendants' actions did not constitute outrageous conduct and plaintiffs did not suffer severe emotional distress. Defendants asked that plaintiffs' petition be dismissed.

Plaintiffs resisted.

The district court sustained Kubas' motion for summary judgment on plaintiffs' claims for negligent and intentional infliction of emotional distress and dismissed plaintiffs' petition. The court ruled that plaintiffs had failed to meet their burden of producing evidence showing a genuine issue of fact on every element of those claims. *See* Iowa R.Civ.P. 237(c). The court subsequently confirmed this decision in overruling plaintiffs' Iowa Rule of Civil Procedure 179(b) motion.

Plaintiffs appeal from the district court's rulings, making alternative arguments. First, plaintiffs contend that the court abused its discretion in setting aside the default entered against defendants because defendants' excuses fail to meet the mistake and excusable neglect standards under Iowa Rule of Civil Procedure 236. Alternatively, plaintiffs argue that the court erred in sustaining Kubas' motion for summary judgment because genuine issues of material fact exist regarding each of their claims, precluding disposition by summary judgment.

The record consists of the pleadings, motion for summary judgment and resistance, depositions, affidavits, exhibits, and answers to written interrogatories. *See* Iowa R.Civ.P. 237(c).

II. *Propriety of setting defendants' default aside under Iowa Rule of Civil Procedure 236.* On appeal plaintiffs assert that the district court abused its discretion in setting aside defendants' default on the basis of mistake and excusable neglect.

A. *Rule 236 and scope of review.* Iowa Rule of Civil Procedure 236 provides that:

On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, *excusable neglect* or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation.

(Emphasis added.) A proceeding under this rule is at law. *Central Nat'l Ins. Co. of*

*Omaha v. INA,* 513 N.W.2d 750, 753 (Iowa 1994) (*Central I*) (citation omitted). Initially, we observe that because no judgment had yet been entered, defendants' motion under rule 236 was timely. *See Davenport Bank & Trust Co. v. City of Davenport,* 318 N.W.2d 451, 453 (Iowa 1982).

 We recently set forth the basic principles guiding our review of a court's ruling on a motion to set aside a default under rule 236 in *Central I,* 513 N.W.2d at 753–54.[3] We do not repeat those basic principles here. We simply reiterate the fact that we vest district courts with broad discretion in ruling on a motion to set aside a default, and that we reverse such a ruling only if that discretion has been abused. *Id.* at 753. Generally, we find such an abuse only when there is a lack of substantial evidence to support the district court's ruling. *Id.* (citation omitted). We also reiterate our greater reluctance to interfere with a court's grant of a motion to set aside a default than with its denial. *See id.* at 754 (citations omitted).

B. *Showing of excusable neglect.* Besides setting forth principles of review in *Central I,* we also enumerated four factors for determining whether excusable neglect under rule of civil procedure 236 constituting good cause has been shown. Those factors are listed in the form of four questions as follows:

> First, did the defaulting party actually intend to defend? Whether the party moved promptly to set aside the default is significant on this point. Second, does the defaulting party assert a claim or defense in good faith? Third, did the defaulting party willfully ignore or defy the rules of procedure or was the default simply the result of a mistake? Last, whether relief is warranted should not depend on who [e.g. the litigant or an attorney or an insurer] made the mistake.

*Id.* at 756. In enumerating these factors, we emphasized a liberal approach in applying

them to advance the goal of determination of controversies on their merits. *See id.*

The district court made its ruling to set aside defendants' default under rule 236 prior to our decision in *Central I* and thus did not examine the facts of the case with reference to the four factors. Yet, taking a liberal approach, the court concluded that defendants' failure to answer was based on mistake, inadvertence, and excusable neglect, and that they had shown good cause for setting aside the default. The court made this determination based on the two reasons put forth by Kubas for their failure to initially respond: (1) each of the two individual defendants thought the other was securing counsel to represent them and (2) defendants felt that they were not the real party in interest and therefore that they need not defend because the cremation was authorized by a sibling of the plaintiffs.

Having the benefit of our *Central I* decision, defendants argue that the district court's ruling was correct because defendants have met *Central I's* requirements. First, they urge that they actually intended to defend as evidenced by the fact that they moved promptly to set aside the default once they had notice of it. Second, they asserted a defense in good faith which is evident by the subsequent sustaining of their motion for summary judgment. Third, defendants argue that they did not willfully ignore or defy the rules of procedure but simply were mistaken about which one of them was going to retain a lawyer to represent them.

On the other hand, plaintiffs insist that Kubas failed to satisfy the first and third factors set forth in the *Central I* case. Regarding the first factor, plaintiffs point out that Kubas waited nearly four months, and until after the hearing on damages was set, before moving to set aside the default. Plaintiffs assert that such inaction demonstrates defendants' intention not to defend. As to the third factor, plaintiffs contend that the fact that Kubas chose not to respond because they did not believe they were the

**3.** We retained jurisdiction in this case and subsequently affirmed the district court's setting aside of the defendant's default in *Central National Insurance Co. of Omaha v. INA,* 522 N.W.2d 39 (Iowa 1994) (*Central II*). For convenience, we refer to these decisions as *Central I* and *Central II,* respectively, throughout the remainder of the opinion.

real party in interest indicates that they were not mistaken as to their responsibilities to respond to the petition, but instead chose not to respond because of their own personal feelings regarding the merits of the lawsuit. Plaintiffs argue that this clearly shows Kubas' willful failure to abide by the rules of civil procedure. Plaintiffs also point out that Kubas' two stated reasons for failure to initially respond, each thinking the other was securing counsel and believing they were not the real party in interest, are inconsistent with one another. Based on this analysis, plaintiffs argue that the district court erred in concluding that defendants had shown excusable neglect and that such error constituted an abuse of discretion.

■ Under the circumstances of this case and keeping in mind the liberal approach to interpreting neglect, we cannot say that the district court abused its discretion in concluding that defendants met their burden of establishing good cause based on excusable neglect under rule 236. In light of the subsequent summary judgment motion, defendants certainly met the requirement of asserting a defense in good faith. Also, defendants' relatively prompt motion to set aside the default entry within a few months and the court's finding that defendants mutually believed that the other was securing counsel show that they actually intended to defend against the suit. Finally, similar to the situation in *Central II* where an employee erroneously believed that the original notice and petition the employee received pertained to a separate action rather than to an action against the employee's own company, *Central II*, 522 N.W.2d at 41, the court found that Kubas mistakenly believed that they were not the real parties in interest, not that they were willfully defying the rules of procedure. Because these findings support a showing of good cause in accordance with the *Central I* factors for excusable neglect, we find no abuse of discretion and thus affirm the court's ruling setting aside the clerk's default entry against all defendants under rule 236. As a result, we need not reach plaintiffs' other contentions concerning the default.

III. *Propriety of granting summary judgment under Iowa Rule of Civil Procedure 237.* Having found that the district court properly set aside the default, we next examine whether the court properly sustained defendants' motion for summary judgment on each of plaintiffs' claims.

■ A. *Rule 237, summary judgment principles, and scope of review.* As is well known, a defending party may move for summary judgment as to all of the claims asserted against the party under Iowa Rule of Civil Procedure 237(b). The movant has the burden of establishing the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 811 (Iowa 1994). When the movant has met this burden, we will uphold a grant of summary judgment. *Hoffnagle*, 522 N.W.2d at 811. When ascertaining whether the district court correctly concluded the movant had met its burden, we examine whether, upon the basis of such material before the court as would be competent proof at trial, the court would have been compelled to direct a verdict for the movant. *Meyer v. Nottger*, 241 N.W.2d 911, 917 (Iowa 1976). If a directed verdict would have ultimately been required, then summary judgment is proper, and we will uphold the judgment sustaining the movant's motion. *Id.*

With these guiding principles in mind, we address the specific issues presented in this aspect of the appeal.

B. *Negligent infliction of emotional distress claim.* First, plaintiffs argue that the district court erred in granting summary judgment to defendants on plaintiffs' claim for negligent infliction of emotional distress because they presented genuine issues of material fact on the claim. We reject plaintiffs' argument and conclude that the district court correctly dismissed plaintiffs' negligence claim because plaintiffs failed to satisfy the physical injury requirement of such a claim and because a new exception to that requirement is not warranted in this case.

■ The principle is well established that damages for negligent infliction of emotional distress are generally denied absent some

physical injury to the plaintiff. *See Mills v. Guthrie County Rural Elec. Coop.*, 454 N.W.2d 846, 852 (Iowa 1990) (citing *Wambsgans v. Price*, 274 N.W.2d 362, 365 (Iowa 1979)). We have departed from this principle only in a few instances where the circumstances have justified imposition of a duty on the injurer to exercise ordinary care to avoid causing emotional harm. *See, e.g., Barnhill v. Davis*, 300 N.W.2d 104, 107–08 (Iowa 1981) (concluding injurer has a duty to exercise ordinary care to avoid causing emotional harm to bystander witnessing serious injury or death of a close relative); *Oswald v. LeGrand*, 453 N.W.2d 634, 639–40 (Iowa 1990) (holding medical professionals have a duty to exercise ordinary care to avoid causing emotional harm to patient receiving medical services).

Plaintiffs do not base their claim for emotional distress damages on physical injuries because they did not sustain any. Rather, they urge us to recognize a duty to exercise ordinary care to avoid causing emotional harm for persons involved in especially emotionally charged relationships, such as the relationship in this case between the funeral directors and the family members of the deceased.

■ Like the district court, we decline to recognize a duty simply on the basis of the existence of a highly emotional relationship as urged by plaintiffs. Plaintiffs erroneously assume that the sole basis for our recognition of a duty, on the part of injurers to avoid causing emotional harm, is the inherent emotion involved in certain situations. Although an emotional situation or relationship is necessarily present in cases where we have recognized a duty to avoid causing emotional harm, *see id.* at 639, other factors must be present for a duty to avoid causing emotional harm to arise. Such factors include the injured party personally experiencing the injurer's negligent conduct, *see Barnhill*, 300 N.W.2d at 108 (stating that to determine whether a bystander may recover for emotional distress a court should consider whether "[t]he emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence"), and the injured party having a contract with the injurer, *see Oswald*, 453 N.W.2d at 639.

■ In this case, plaintiffs neither experienced or observed any alleged negligent conduct by defendants nor had a contract with defendants. Plaintiffs were not at the Cedar Rapids funeral home when defendants cremated their father's body; they were in Michigan at the time. In fact, Thomas, Jr. was not aware of the actual cremation until sometime after the procedure had been completed. Further, plaintiffs concede that the contract with Kubas was between Kubas and Kimberly, not between Kubas and the plaintiffs. Accordingly, under our present case law plaintiffs were too removed from defendants' alleged negligent conduct to cause the imposition of a duty on defendants to exercise ordinary care to avoid causing emotional harm to plaintiffs. As a result, we conclude that the district court correctly dismissed plaintiffs' negligent infliction of emotional distress claim.

■ C. *Intentional infliction of emotional distress claim.* Next, plaintiffs contend that the district court erred in dismissing their claim for intentional infliction of emotional distress. In order for the plaintiffs to set forth a prima facie case for the tort of intentional infliction of emotional distress, the plaintiffs must establish the following elements:

(1) Outrageous conduct by the defendant[s];

(2) The defendant[s]' intention of causing, or reckless disregard of the probability of causing, emotional distress;

(3) The plaintiff[s] suffering severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant[s]' outrageous conduct.

*Meyer*, 241 N.W.2d at 918. The district court concluded that plaintiffs failed to establish two of these elements: (1) outrageous conduct and (3) severe emotional distress.

■ Plaintiffs challenge each of the district court's conclusions. We reject plaintiffs' challenge because even if we assume, without

deciding, that the district court erred in concluding that plaintiffs did not present sufficient evidence to create a genuine issue of fact as to outrageous conduct by defendants, we disagree with plaintiffs' contention that they presented sufficient evidence of severe emotional distress to generate a jury question. Accordingly, we must affirm the district court's summary judgment disposition of their intentional infliction of emotional distress claim.

The evidence in the record pertaining to plaintiffs' emotional distress was insufficient to generate a fact question as to severe or extreme emotional distress. The record shows that the emotional distress of plaintiff Maryrose consisted of headaches, insomnia, and loss of appetite. She was not treated by a physician or any other medical practitioner for the symptoms and has taken no medications. Also, despite her loss of appetite, she has not suffered any weight loss.

Thomas, Jr.'s emotional distress was similarly insufficient. He initially had some fits of rage but his last such outburst was in November 1989. Like his sister, he suffered no physical difficulties and did not seek any medical attention as a result of the alleged wrongful cremation of his father.

This evidence does not meet the level of proof of severity as existed in the intentional tort actions we have held generated a jury question. *See, e.g., Meyer,* 241 N.W.2d at 915–16 (holding jury question generated where plaintiff was nauseous, had difficulty breathing and suffered acute myocardial ischemia); *Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 855 (Iowa 1973) (concluding evidence sufficient for jury where plaintiff "broke down," lost forty pounds, and suffered abdominal cramps).

Rather, the evidence of plaintiffs' distress is similar to that presented in cases where we have held the evidence of mental distress to be insufficient to generate a jury question. *See, e.g., Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (holding intentional tort action should not have been submitted to the jury where plaintiff merely "wasn't as interested, or . . . was downhearted more or less and depressed"); *Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981)

(holding plaintiff failed to present substantial evidence of extreme emotional distress to submit claim to a jury where plaintiff "was very, very down, feeling super badly, and felt that he [had] lost everything").

While the plaintiffs were understandably upset over their father's final disposition, they have not presented sufficient facts on the severe emotional distress element of their intentional tort claim to survive summary judgment disposition. Accordingly, we must uphold the district court's grant of summary judgment to defendants on plaintiffs' claim for intentional infliction of emotional distress.

IV. *Conclusion.* Plaintiffs assert other assignments of error in which we find no merit and do not specifically address.

On those assignments we have discussed, we conclude that the district court correctly set aside defendants' default under Iowa Rule of Civil Procedure 236 and properly sustained defendants' summary judgment motion under rule of civil procedure 237 on all counts of plaintiffs' petition. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**