**IN THE SUPREME COURT OF IOWA**

No. 69 / 06–1140

Filed September 12, 2008

**MARILYN ELAINE OVERTURFF,**

Appellant,

vs.

**RADDATZ FUNERAL SERVICES, INC.,
d/b/a CALDWELL RADDATZ FUNERAL HOME & CREMATORY,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

A widow appeals from the summary judgment entered in favor of a funeral home on her claim for negligent infliction of emotional distress. **AFFIRMED.**

Linda Channon Murphy of the Law Office of Linda Channon Murphy, P.L.C., Des Moines, for appellant.

Michael S. Jones of Patterson Law Firm, L.L.P., Des Moines, for appellee.

**BAKER, Justice.**

This appeal arises from the final disposition of the remains of Jack Burke Overturff who died in December 2003. Jack's widow, Marilyn Elaine Overturff, appeals from a summary judgment entered in favor of Raddatz Funeral Services, Inc. on her claim for negligent infliction of emotional distress. She contends that a cause of action against a funeral home for negligent infliction of emotional distress may arise out of the funeral home's breach of a duty imposed by the statutes and rules that regulate Iowa's funeral service industry. Because there was no violation of the regulation in place at the time of Jack's death and cremation, the regulation cannot be relied upon to establish a duty. We therefore affirm the district court judgment.

I. **Background Facts and Proceedings**.

Jack and Marilyn were married on September 15, 1988. Both had been previously married. Jack had three sons from a previous marriage, Paul, Vane, and Clyde Overturff. In October 1995, Jack and Marilyn purchased adjoining burial spaces at Highland Memory Gardens Cemetery.

In March 2003, Jack was diagnosed with cancer. On August 4, he was admitted to the hospital. After he was released later that month, he went to the home of a friend, where he lived until his final hospitalization in December. On August 27 and on September 3, Jack executed durable power of attorney documents, appointing Vane as his attorney in fact for health care decisions.

On September 10, Jack filed a petition for dissolution of his marriage with Marilyn. On October 7, he filed a motion to waive the 90-day waiting period. Jack testified that he wanted to obtain the dissolution before his death so that he could dispose of his estate

without regard to Marilyn. The court, noting "substantial concerns regarding [Jack's] competency," denied the motion to waive the waiting period.

By December 20, Jack was gravely ill, and his daughter-in-law, Debbie Overturff, contacted Raddatz and spoke with Nathan Pottinger, a licensed funeral director and Raddatz employee. According to Pottinger, Debbie told him that Jack was divorced. Jack died at a hospice, the Taylor House, on December 21. He was still married to Marilyn. They were not legally separated.

On December 21, Pottinger met with Jack's sons and obtained Jack's body. According to Pottinger, the family told him Jack was divorced and that he had no wife. On December 22, James Raddatz met with Vane, Paul, and a female family member to complete the arrangements. Raddatz testified that the family told him Jack did not have a spouse. On the 22nd, Vane signed an authorization to cremate, which included the following provision:

> AUTHORITY OF REPRESENTATIVE: The REPRESENTATIVE warrants and represents to FUNERAL HOME that the REPRESENTATIVE is the person or the appointed agent of the person who by law has the paramount right to arrange and direct the disposition of the remains of the DECEDENT and that no other person(s) has a superior right over the right of the REPRESENTATIVE.

Vane also signed a statement of funeral goods and services, which stated, "I hereby acknowledge that I have the legal right to arrange the final services for the deceased, and I authorize this funeral establishment to perform services . . . ." A vital statistics form on Caldwell-Raddatz letterhead lists Jack's marital status as divorced. A "face sheet" from Iowa Methodist Medical Center, which Marilyn contends Pottinger retrieved, indicates Jack is married.

Vane made arrangements for Jack's body to be cremated. According to Pottinger and Raddatz, Jack's sons did not communicate to them that Jack was still married until they picked up Jack's ashes and urn. At that time they brought in a handwritten death certificate which listed Jack's marital status as married. Clyde testified that the partially completed death certificate was presented to the funeral home employees prior to Jack's body being cremated.[1]

Marilyn learned that Jack had died when she went to the Taylor House on December 22. Although she saw the funeral announcement in the paper, she did not attend the funeral because she felt Jack deserved a respectable service and feared the funeral would become a "circus" were she in attendance. She did not try to see Jack's body before the funeral. She did not learn that Jack's body had been cremated until after the funeral.

On February 22, 2005, Marilyn filed a petition against several defendants, including Raddatz, for events and actions surrounding Jack's last days, death, and cremation.[2] In pertinent part, she alleged that Raddatz had a duty to determine her identity and to provide her with an opportunity to make decisions regarding disposition of Jack's remains. She stated two causes of action against Raddatz: negligent infliction of emotional harm and negligent interference with a contractual

---

[1] On summary judgment, we view the facts in the light most favorable to the nonmoving party. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). Therefore, for purposes of this appeal, we accept both that Pottinger retrieved the "face sheet" and that the death certificate was given to Raddatz prior to the cremation of Jack's body.

[2] The other defendants were dismissed or entered into settlement agreements.

relationship.[3] Raddatz filed a motion for summary judgment which the district court granted. Marilyn appeals.

## II. Scope of Review.

We review a district court ruling on a motion for summary judgment for correction of errors at law. *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 482 (Iowa 2007).

> Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to establish there is no genuine issue of material fact, and the facts must be viewed in the light most favorable to the nonmoving party.

*Id.* at 483 (citing *McIlravy v. North River Ins. Co.,* 653 N.W.2d 323, 327–28 (Iowa 2002)).

Because the existence of a duty under a given set of facts is a question of law for the court, it is properly resolvable by summary judgment. *Kolbe v. State*, 625 N.W.2d 721, 725 (Iowa 2001); *see also Sankey v. Richenberger,* 456 N.W.2d 206, 209 (Iowa 1990) ("An actionable duty is defined by the relationship between individuals; it is a legal obligation imposed upon one individual for the benefit of another person or particularized class of persons.").

## III. Existence of Duty.

Marilyn contends that Raddatz had a duty to avoid causing her emotional harm. It is a well-established principle that, if a plaintiff has suffered no physical injury, she will ordinarily be denied recovery on a negligent infliction of emotional distress claim. *Millington v. Kuba*, 532 N.W.2d 787, 792–93 (Iowa 1995). "An exception exists, however, where

---

[3] While not conceding the point, Marilyn does not appeal the district court's entry of summary judgment on her negligent-interference-with-a-contractual-relationship claim.

the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm." *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990) (citing *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 354 (Iowa 1989)).

Absent some physical injury to the plaintiff, emotional-distress damages are allowed only in a few situations where unique circumstances justify the imposition of such a duty on the defendant. *Millington*, 532 N.W.2d at 792–93 . We have recognized negligent infliction of emotional distress claims, absent some physical injury, "in the negligent performance of contractual services that carry with them deeply emotional responses in the event of breach," such as the delivery of medical services incident to the birth of a child, "the transmission and delivery of telegrams announcing the death of a close relative, and services incident to a funeral and burial." *Oswald*, 453 N.W.2d at 639 (citing *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976); *Mentzer v. Western Union Tel. Co.*, 93 Iowa 752, 768–71, 62 N.W. 1, 5–6 (1895)). For example, we allowed recovery for emotional distress without physical injury where a telegraph company negligently failed to deliver a message regarding the plaintiff's mother's death. *Mentzer*, 93 Iowa at 768–71, 62 N.W. at 5–6. "[I]t was reasoned that the telegraph company owed a duty of due care to the public . . . and that the enforcement of that duty, by allowance of damages, would force them to be more careful." *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 355 (Iowa 1989) (citing *Mentzer*, 93 Iowa at 757–58, 771, 62 N.W. at 3, 7). In the telegraph case, allowing recovery in the absence of a physical injury was largely based on public policy considerations. *Id.*

This court has previously held that a plaintiff may recover damages "for mental distress, absent physical trauma, arising out of the breach of

a contract to perform funeral services." *Meyer*, 241 N.W.2d at 921. "Although an emotional situation or relationship is necessarily present in cases where we have recognized a duty to avoid causing emotional harm, other factors must be present for a duty to avoid causing emotional harm to arise." *Millington*, 532 N.W.2d at 793 (citation omitted). We have recognized "the injured party having a contract with the injurer" as one such factor. *Id.* (citing *Oswald*, 453 N.W.2d at 639). In this case, the plaintiff is unable to rely upon that factor for the creation of a duty due to the absence of a contract between Marilyn and Raddatz.

We turn then to Marilyn's contention that Iowa's statutes and rules created a duty in Raddatz to avoid causing her emotional harm. Iowa has long accepted the proposition that the breach of a duty imposed by statute or regulation may result in liability.

> [I]t is well established that if a statute or regulation such as an OSHA standard provides a rule of conduct specifically designed for the safety and protection of a certain class of persons, and a person within that class receives injuries as a proximate result of a violation of the statute or regulation, the injuries "would be actionable, as . . . negligence per se." To be actionable as such, however, "the harm for which the action is brought must be of the kind which the statute was intended to prevent; and the person injured, in order to recover, must be within the class which [the statute] was intended to protect."

*Wiersgalla v. Garrett*, 486 N.W.2d 290, 292 (Iowa 1992) (citations omitted). Once a plaintiff establishes that her injuries resulted from the defendant's violation of such a statute, "there is in effect a presumption that the defendant has violated his legal duty to exercise due care." *Id.* at 293.

Marilyn asserts that Raddatz owed her a duty under the statutes and regulations governing funeral directors to allow her to dictate the appropriate disposal of Jack's body. She further asserts that a breach of

that duty permits a cause of action. A prerequisite to her claim is a duty running to her from Raddatz. *See Stennett Elevator, Inc. v. State*, 430 N.W.2d 122, 124 (Iowa 1988). She must show that she had the right to dictate the appropriate disposal of Jack's body, i.e., that Raddatz had a duty to follow her dictates.

According to the Iowa Administrative Code in effect in December 2003, the persons authorized to make funeral arrangements and handle the final disposition of the decedent, in order of priority, are:

> 1. The attorney-in-fact pursuant to a durable power of attorney for health care.
>
> 2. The spouse of the decedent.
>
> 3. The decedent's surviving adult children. . . .

Iowa Admin. Code r. 645—100.1 (2003).

Although Raddatz did not contract with Vane because he held a durable power of attorney for health care, Vane was in fact the authorized person under the regulation to order the final disposition of Jack's remains. Raddatz did not violate rule 645—100.1 by allowing Vane to make the funeral arrangements. Because there was no violation, Marilyn cannot rely on the regulation to establish "a presumption that [Raddatz] violated his legal duty to exercise due care." *Wiersgalla*, 486 N.W.2d at 293. Raddatz simply owed no duty to Marilyn. Vane had the authority under the regulations to determine the disposition of Jack's remains. Without a duty to Marilyn, there can be no claim.[4]

---

[4] Because we do not need to reach the issue, we do not decide today whether a breach of the statute or regulations involving funeral directors gives rise to a cause of action for negligent infliction of emotional distress without physical injury.

**IV.    Conclusion.**

We affirm the district court judgment in favor of Raddatz.   There was no violation of rule 645—100.1.   Therefore, the regulation cannot be relied upon to establish a duty in Raddatz toward Marilyn.   Because Raddatz owed no duty to Marilyn either by contract or statute, summary judgment was appropriate.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.