**Ray MCNEAL, Individually and as Father and Next Friend of Crystal McNeal, a Minor, and Lee McNeal, Individually, Plaintiffs–Appellants,**

v.

**NORTHWEST IOWA HOSPITAL CORPORATION, d/b/a St. Luke's Regional Medical Center, Defendant–Appellee.**

No. 11–1036.

Court of Appeals of Iowa.

March 28, 2012.

---

Willis J. Hamilton of Hamilton Law Firm, P.C., Storm Lake, for appellants.

Michael W. Ellwanger and Robert N. Stewart of Rawlings, Nieland, Killinger, Ellwanger, Jacobs, Mohrhauser & Nelson, L.L.P., Sioux City, for appellee.

Considered by EISENHAUER, C.J., and DANILSON and BOWER, JJ.

**DANILSON, J.**

The McNeals appeal from the district court's order granting summary judgment to defendant St. Luke's Hospital. Crystal McNeal, a pediatric patient at St. Luke's, underwent ear surgery on September 25, 2007.[1] While Crystal was in the operating room, a pediatric nurse entered her room to change the sheets and make her bed. The nurse noticed a teddy bear, attached by a necklace, on the side rail of the bed touching the floor. The nurse re-positioned the bear by hanging it by the necklace on the trapeze bar above Crystal's bed "so that she could see her teddy bear ... when she came back" as was a "common practice" on the pediatric floor. Crystal's father and uncle, Ray and Lee, returned to the room later that afternoon and were upset when they saw the teddy bear hanging above Crystal's bed, claiming the bear "evoked images of a lynching as it was perceived" by them, as African Americans. Ray and Lee refused to allow the nurse to take the bear down and place it elsewhere. When Crystal returned to the room an hour later, the bear was still hanging above the bed.

The McNeals sued St. Luke's for negligent infliction of emotional distress,[2] and the district court granted St. Luke's motion for summary judgment.[3] The court determined the McNeals had not established a showing of circumstances that would support an exception to the general

---

1. Crystal suffered no complications from the surgery.

2. The McNeals also raised claims of intentional infliction of emotional distress and a violation of their civil rights, but later dismissed those claims.

3. St. Luke's motion for summary judgment was initially heard by Judge Sokolovske, who entered a ruling denying the motion on September 14, 2009. On December 30, 2009, the case was assigned to Judge Jacobson for trial. Upon reviewing the file and following a hearing, Judge Jacobson reversed Judge Sokolovske's initial ruling and granted St. Luke's motion for summary judgment. *See Hoefer v. Wisconsin Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 339 (Iowa 1991) ("While it may be uncommon for a district court to reconsider a motion *sua sponte*, Iowa adheres to the general rule that a district court judge may review and change a prior interlocutory ruling of another district judge in the same case."). It is from this ruling that the McNeals appeal.

rule that a plaintiff who suffered no physical injury will be denied recovery for emotional distress. *Overturff v. Raddatz Funeral Servs., Inc.*, 757 N.W.2d 241, 245 (Iowa 2008) ("It is a well-established principle that, if a plaintiff has suffered no physical injury, she will ordinarily be denied recovery on a negligent infliction of emotional distress claim."). In this appeal, the McNeals argue the district court erred in concluding "that Iowa law does not support a cause of action for negligent infliction of emotional distress" and that the court's ruling "was based on a very narrow and erroneous interpretation" of the exception to the general rule set forth in *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990).

The issue in this case does not relate to whether the conduct was outrageous or whether the McNeals suffered emotional distress. For purposes of this ruling, we accept the fact the McNeals suffered emotional distress by the images conjured by the hanging bear.[4] We also observe that any claims the act was done intentionally have been dismissed.

█ Most recently, our supreme court reiterated that the issue of whether a cause of action for negligent infliction of emotional distress exists under the facts in a case turns on whether a duty should be imposed. *Overturff*, 757 N.W.2d at 245. The existence of a duty under the facts is a question of law for the court and is "prop-erly resolvable by summary judgment." *Id.*

We have carefully reviewed the record, the briefs of the parties, and the district court's succinctly written opinion.[5] Upon our review for correction of errors at law and viewing the facts in the light most favorable to the McNeals, we agree with the district court's finding that the nurse's action in this case in hanging the teddy bear by a necklace above Crystal's bed does not constitute one of the "few instances" recognized by our supreme court where "liability for emotional injury should attach" to a "delivery of medical services" where a physical injury was not sustained. *Id.* (recognizing a claim of negligent infliction of emotional distress sans a physical injury to the plaintiff in the course of delivery of medical services incident to the birth of a child); *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976) (recognizing the claim arising from the delivery of services incident to a funeral and burial); *Mentzer v. W. Union Tel. Co.*, 93 Iowa 752, 768–71, 62 N.W. 1, 5–6 (1895) (recognizing the claim following the transmission and delivery of telegrams announcing the death of a close relative); *see also Millington v. Kuba*, 532 N.W.2d 787, 793 (Iowa 1995) (observing the court has "departed from [the general rule] only in a few instances where the circumstances have justified imposition of a duty on the injurer to exercise ordinary care to avoid causing emotional harm," and declining to recog-

---

4. As the United States Supreme Court recently noted, "Between 1882 and 1968, there were at least 3,446 reported lynchings of blacks in the South." *McDonald v. City of Chicago, Ill.*, —— U.S. ——, ——, 130 S.Ct. 3020, 3087, 177 L.Ed.2d 894, 969 (2010) (Thomas, J., concurring). One court has also observed that racial insults "conjure up the entire history of racial discrimination in this country." *Taylor v. Metzger*, 152 N.J. 490, 706 A.2d 685, 695 (1998).

5. It would be a mischaracterization for the McNeals to interpret the district court's ruling as a conclusion "that Iowa law does not support a cause of action for negligent infliction of emotional distress." Rather, the district court correctly observed Iowa law does not allow recovery of damages for emotional distress as a result of negligent conduct, except when accompanied by a physical injury, but for a limited exception, as set forth in *Oswald*, 453 N.W.2d at 639.

nize a duty "simply on the basis of the existence of a highly emotional relationship").

■ Specifically, we do not find the medical services complained of here involve "a matter of life and death, evoking such 'mental concern and solicitude' that the breach of a contract incident thereto '[would] inevitably result in mental anguish, pain and suffering.'"[6] *Oswald,* 453 N.W.2d at 639 (quoting *Meyer,* 241 N.W.2d at 920); *see also Overturff,* 757 N.W.2d at 245 (acknowledging the court has "recognized negligent infliction of emotional distress claims, absent some physical injury, 'in the negligent performance of contractual services that carry with them deeply emotional responses in the event of breach'" (citations omitted)); 10 Barry A. Lindahl, *Iowa Practice Series, Civil Practice Forms,* § 69:3 (2011 ed.) (describing the exception to the general rule as being established "[w]here the parties assume a

relationship that is contractual in nature and deals with services or acts that involve deep emotional responses in the event of a breach").

Here, Crystal underwent ear surgery, which is not the type of medical service that involves a deep emotional response similar to life and death circumstances. Further, there is no evidence Crystal's uncle, Lee McNeal, assumed a relationship that was contractual in nature with the hospital.

For these reasons, we affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

**6.** In light of this finding, we need not reach the issue raised by the McNeals in regard to whether Crystal's emotional distress was caused by an intervening, superseding act of Ray McNeal in refusing to allow the teddy bear to be removed from above the bed prior to Crystal's return to the room.