**IN THE COURT OF APPEALS OF IOWA**

No. 14-0490
Filed February 11, 2015

**JANE DOE,**
　　　Plaintiff-Appellant,

**vs.**

**JOHN ROE, M.D., MEDICAL
ANESTHESIA ASSOCIATES, P.C.,
PHYSICIAN PAIN CONSULTANTS, P.C.,
and JENNIE EDMUNDSON ANESTHESIA
SERVICES, P.C.,**
　　　Defendants-Appellees.

_____

　　　Appeal from the Iowa District Court for Pottawattamie County, James

Heckerman, Judge.

　　　Plaintiff appeals an adverse grant of summary judgment. **AFFIRMED.**

　　　Randall J. Shanks and Emily A. Shanks of Shanks Law Firm, Council

Bluffs, for appellant.

　　　Frederick T. Harris and Eric G. Hoch of Finley, Alt, Smith, Scharnberg,

Craig, Hilmes & Gaffney, P.C., Des Moines, for appellee John Roe, M.D.

　　　Patrick G. Vipond and William R. Settles of Lamson, Dugan & Murray,

L.L.P., Omaha, Nebraska, for appellees Medical Anesthesia Associates, P.C.;

Physician Pain Consultants, P.C.; and Jennie Edmundson Anesthesia Services,

P.C.

　　　Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

This is a battery and medical negligence case in which plaintiff Jane Doe alleges Dr. John Roe may have taken advantage of her to satisfy his "perversions" while Jane Doe was sedated during a medical procedure. Her case is based on conjecture, speculation, and innuendo. The district court granted summary judgment in favor of Dr. Roe and his employer. Jane Doe timely filed this appeal.

I.

Dr. Roe is a licensed anesthesiologist specializing in pain management employed by Medical Anesthesia Associates P.C., doing business as Physician Pain Consultants, P.C., and Jennie Edmundson Anesthesia Services, P.C. (hereinafter "MAA").

Jane Doe suffered a back injury in 2007 and underwent surgery for the same. She treated with Dr. Roe for pain management on several occasions in January, February, and March 2010, presenting with back pain from two work-related incidents. On April 6, 2010, Dr. Roe treated Jane Doe in his office. The district court described that visit as follows:

> Plaintiff claims Dr. Roe told her that her insurance company will not cover any more injections. She asserts Dr. Roe offered to continue treating her at his office, and not the outpatient clinic, so he could provide her the care free of charge.
>
> Plaintiff contends Dr. Roe scheduled an appointment to see her at his office on April 6, 2010, at 10 a.m. She claims when she arrived at Dr. Roe's office, it was not open and no staff was present. Dr. Roe arrived shortly thereafter and escorted Plaintiff into the waiting room, where he explained the trigger-point injection procedure to her. The parties dispute what information Dr. Roe provided Plaintiff about the procedure. Plaintiff claims Dr. Roe told

her that she would be hooked up to an IV, but would not be sedated for the procedure.

Plaintiff and Dr. Roe then went into an exam room so he could perform the procedure. The parties dispute what events happened next. Plaintiff claims Dr. Roe asked her to lie on her stomach so he could inject the medicine in her back. Plaintiff contends Dr. Roe did not use any devices to monitor her condition during the procedure. That is the last thing Plaintiff remembers. She asserts when she came to, she was lying on her back, groggy, dazed and alone in the examination room. As she was regaining her senses, Plaintiff noticed a "white sticky substance" on her face. At that time, Dr. Roe came back into the exam room and wiped her face off. Dr. Roe told her the substance was the medication used in her injections. Dr. Roe then escorted Plaintiff to the office door and allowed her to drive home in a groggy and dazed condition.

Based on these circumstances, Jane believes that Dr. Roe committed acts of sexual misconduct towards her.

Jane Doe brought suit against Dr. Roe and MAA. She asserted claims for breach of fiduciary duty, battery, medical negligence, and intentional infliction of emotional distress against Dr. Roe. She asserted a claim against MAA for negligent supervision and retention of Dr. Roe. Dr. Roe moved to bifurcate the trial on the grounds that the case involved two classes of claims and that the claims against Dr. Roe's employer could not be tried without the introduction of inadmissible and unfairly prejudicial evidence in the case against Dr. Roe. The district court granted the motion. Dr. Roe and MAA moved for summary judgment as to all counts. In Jane Doe's resistance to the motion for summary judgment, she dismissed her claim for intentional infliction of emotional distress. The district court granted summary judgment in favor of Dr. Roe and MAA as to all other counts.

4

II.

We review the district court's grant of summary judgment for corrections of errors at law. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The court views the summary judgment record in the light most favorable to the party resisting the motion for summary judgment and "indulge[s] in every legitimate inference that the evidence will bear in an effort to ascertain the existence" of a genuine issue of material fact. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996). In addition, summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cnty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

III.

A.

Iowa law recognizes the tort of battery as defined by the Restatement (Second) of Torts. *See Nelson v. Winnebago Indus. Inc.*, 619 N.W.2d 385, 388 (Iowa 2000) (citing Restatement (Second) of Torts §§ 13, 18 (1965)). The

Restatement defines battery in two ways: harmful contact or offensive contact. The first alternative requires "a physical impairment of the condition of another's body, or physical pain or illness." *Id.* Under the second alternative, the plaintiff must establish the following: (1) the tortfeasor intended to cause harmful or offensive contact to another or an imminent apprehension of such contact; and (2) an offensive contact with the other directly or indirectly resulted. *See id.* at 388–89. "[B]odily contact is offensive if it offends a reasonable sense of personal dignity." *Id.* at 389. Medical battery is a derivative of the second alternative. *See Moser v. Stallings*, 387 N.W.2d 599, 601 (Iowa 1986). A claim for medical battery "may lie when a patient consents to one type of treatment and the physician intentionally deviates from the consent and performs a substantially different treatment." *Pauscher v. Iowa Methodist Med. Ctr.*, 408 N.W.2d 355, 361 (Iowa 1987).

On appeal, Jane Doe casts her claim as a medical battery claim and argues the district court erred in dismissing her medical battery claim. The defendants argue Jane Doe failed to preserve error on the issue. Our error preservation rules are not legal bramble bush that serve no purpose other than ensnaring unwitting litigants. *See State v. Tidwell*, No. 13–0180, 2013 WL 6405367, at *2 (Iowa Ct. App. Dec. 5, 2013). They are statutorily and functionally required because the court of appeals is a court for the correction of error. *See* Iowa Code § 602.5103(1) (2013). If a litigant fails to present an issue to the district court and obtain a ruling on the same, it cannot be said that we are correcting error. Our error preservation rules preserve judicial resources by

allowing the district court the first opportunity to address an issue and correct any error. Finally, our error preservation rules enhance vertical judicial comity. It would be unfair to fault a district court on an issue it never had the opportunity to consider. *See Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 28 (Iowa 2005); *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002). Thus, under our error preservation rules, an issue must ordinarily be raised in and decided by the district court before we will address it on appeal. *See Stammeyer v. Div. of Narcotics Enforcement of Iowa Dep't. of Pub. Safety*, 721 N.W.2d 541, 548 (Iowa 2006).

Jane Doe's medical battery theory is newly crafted and not properly presented for appellate review. Jane Doe never pleaded a claim of medical battery in the district court. She never sought leave to amend her petition to assert a claim of medical battery. In her resistance to summary judgment, Jane Doe never argued medical battery at any point during the summary judgment proceedings. She did not plead or present any evidence that Dr. Roe performed an alternative or substantially different medical treatment to which she did not consent. *See Moser*, 387 N.W.2d at 601-02. The district court's summary judgment ruling was limited to the issue of whether there was an offensive contact and not whether there was a triable issue of fact on whether the doctor performed a procedure to which Doe did not consent. Jane Doe did not move to enlarge or amend the district court's findings and conclusions. We thus conclude Jane Doe has not preserved error on this issue, and we need not address Jane

Doe's argument to the extent she characterizes her claim as a medical battery claim.

With respect to the battery claim actually pleaded in the petition and presented to the district court—offensive touching—we conclude there is no "genuine" issue for trial. *See Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006) ("An issue of fact is 'genuine' if the evidence is such that a reasonable finder of fact could return a verdict or decision for the nonmoving party."). Jane Doe conceded she does not recall any offensive contact before, during, or after the procedure. She had no reason to believe her clothes had been removed. Jane Doe nevertheless contends that Dr. Roe must have touched her in an offensive manner because, when she awoke from sedation, she was turned from her stomach to her back and there was a "white sticky substance" on her face and neck. No reasonable person could find it offensive for a doctor to turn a patient over to a resting position following a procedure. Further, while Jane Doe repeatedly refers to the "white sticky substance" on her face, intimating it may have been ejaculate or some other evidence of Dr. Roe's misconduct, the summary judgment record undisputedly establishes the substance was Lidocaine ejected from a syringe used during the procedure. There is no evidence, or even allegation, in the record to the contrary. Jane Doe's speculation and conjecture that something bad may have happened to her during this medical procedure is insufficient to survive summary judgment. *See Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005) ("Speculation is not sufficient to generate a genuine issue of fact.").

B.

Jane Doe conceded during the summary judgment proceedings that her claim for breach of fiduciary duty was merely duplicative of her medical negligence claim because both claims alleged a breach of the applicable standard of care. The district court thus analyzed the claims as one and the same: a claim for medical negligence. The district court granted Dr. Roe's motion for summary judgment with respect to Jane Doe's medical negligence claim on the ground that recovery was barred in the absence of physical injury.

To establish her claim for medical negligence, Jane Doe is required to establish a breach of the standard of care and resulting damages. *See Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001). She conceded she has not suffered any physical injury as a result of Dr. Roe's alleged negligence. As a general rule, "emotional distress damages are not recoverable in torts 'absent intentional conduct by a defendant or some physical injury to the plaintiff.'" *Miranda v. Said*, 836 N.W.2d 8, 14 (Iowa 2013) (quoting *Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 169 (Iowa 2002)). Stated differently, "[i]t is a well-established principle that, if a plaintiff has suffered no physical injury, she will ordinarily be denied recovery on a negligent infliction of emotional distress claim." *Overturff v. Raddatz Funeral Servs., Inc.*, 757 N.W.2d 241, 245 (Iowa 2008). An exception exists, however, where the nature of the relationship between the parties and the nature of the acts by the defendant within the context of that relationship gives rise to a duty to exercise ordinary care to avoid causing emotional harm. *See Miranda*, 836 N.W.2d at 14; *see also Oswald v. LeGrand*,

453 N.W.2d 634, 639 (Iowa 1990). The relationship and conduct must involve "a matter of life and death evoking such mental concern and solicitude that [a] breach . . . will inevitably result in mental anguish, pain and suffering." *Miranda*, 836 N.W.2d at 36 (internal citation and quotation marks omitted). Examples include "the delivery of medical services incident to the birth of a child, the transmission and delivery of telegrams announcing the death of a close relative, and services incident to a funeral and burial.'" *Overturff*, 757 N.W.2d at 245 (citations omitted). Moreover, the emotional distress must arise from the plaintiff's observation of or sensory experience of the negligent conduct. *See Millington v. Kuba*, 532 N.W.2d 787, 793 (Iowa 1995).

We conclude the district court did not err in dismissing Jane Doe's claim. The trigger point injection was routine and performed on an outpatient basis. Unlike the examples cited above, the procedure in this case did not involve a matter of life and death evoking mental concern and solicitude such that a breach of care would inevitably result in mental anguish. *See McNeal v. Nw. Iowa Hosp. Corp.*, No. 11-1036, 2012 WL 2368786, at *2 (Iowa Ct. App. Mar. 28, 2012) (affirming grant of summary judgment against claim of negligent infliction of emotional distress and stating an ear surgery "is not the type of medical service that involves a deep emotional response similar to life and death circumstances"). Further, plaintiff was sedated during the procedure. She admits that she has no recollection of or personal knowledge of Dr. Roe's allegedly negligent conduct during the course of the procedure. *See Millington*, 532 N.W.2d at 793 (stating court should consider whether plaintiff experienced

the conduct or learned of the conduct after the fact).  Accordingly, her claim fails as a matter of law.

C.

Because the district court granted summary judgment in favor of Dr. Roe on all counts, the district court then dismissed the negligent supervision and retention claim against MAA.  Because we affirm the judgment of the district court as to all counts against Dr. Roe, we affirm the district court's grant of summary judgment in favor of MAA.  *See Schoff v. Combined Ins. Co. of America.*, 604 N.W.2d 43, 53 (Iowa 1999) (holding that negligent supervision and retention requires proof of an underlying tort committed by the employee).

IV.

Jane Doe also raises a procedural issue.  She contends the district court abused its discretion in bifurcating the proceedings.  "In any action the court may, for convenience or to avoid prejudice, order a separate trial of any claim . . . ." Iowa R. Civ. P. 1.914.  Decisions regarding bifurcation are within the trial court's discretion and will be disturbed on appeal only if the trial court abused that discretion.  *Briner v. Hyslop*, 337 N.W.2d 858, 870 (Iowa 1983).  An abuse of discretion occurs where the discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.  *See id.*  There is no showing the district court abused its discretion in bifurcating the proceedings.  In any event, the issue is moot because the district court did not err in granting the defendants' motions for summary judgment.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**